**NO. 25-11245**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

ZEFERINO OCAMPO FITZ,

*Plaintiff-Appellant*,

*v.*

ELIZABETH VENEGAS NUNEZ, *Executor and Heir of the Estate of David Venegas Frias*, ALEJANDRO AGUILERA ROMAN, ALEXIS VENEGAS, GAEL ORDAZ, EDGAR MELENDEZ, ASCENCION QUIROZ, *and* PETER ANGEL,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the Northern District of Texas No. 3:23-CV-2298, Honorable JANE J. BOYLE, U.S.D.J.

---

**OPENING BRIEF OF APPELLANT ZEFERINO OCAMPO FITZ**

---

Humberto Rubio
Rubio & Associates, P.A.
8950 S.W. 74th Court, Suite 1804
Miami, FL 33156

Anthony Thomas Ricciardelli
Ricciardelli Law Firm, P.L.L.C.
1910 Pacific Avenue, Suite 13000
Dallas, TX 75201

***Counsel for Appellant***
***Zeferino Ocampo Fitz***

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that Plaintiff-Appellant Fitz, Zeferino Ocampo Fitz, as well as counsel for Plaintiff-Appellant Fitz, on the one hand, and Defendants-Appellees, Elizabeth Venegas Nunez, Alejandro Aguilera Roman, Alexis Venegas, Gael Ordaz, Edgar Melendez, Ascencion Quiroz, and Peter Angel, as well as counsel for Defendants-Appellees, on the other hand, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Fitz submits that oral argument is needed because this case presents several complex and unsettled questions of law, including questions of foreign law, as well as issues of apparent first impression within this Circuit, namely, whether and under what circumstances the manager of a musical group who is in a position to control the content and quality of the entertainment services provided by the group can acquire ownership of the trademark covering the name of the group. Moreover, this case involves a complex and detailed factual record, including voluminous documents, many of which, although translated, were originally prepared in Spanish. Plaintiff-Appellant Fitz strongly believes that oral argument will allow the Court to fully engage with and understand the nuanced arguments and factual record presented in this case and enable to the Court to reach the most proper and just decision.

/s/ Anthony T. Ricciardelli
Anthony T. Ricciardelli

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 3

A. Factual Background .......... 3

B. Procedural Background .......... 10

SUMMARY OF THE ARGUMENT .......... 12

ARGUMENT .......... 14

I. STANDARD OF REVIEW .......... 14

II. THE DISTRICT COURT ERRED IN CONCLUDING THAT THE 2009 ASSIGNMENT AGREEMENT DID NOT TRANSFER U.S. COMMON LAW RIGHTS IN THE LOS YAGUARU MARKS TO PLAINTIFF-APPELLANT FITZ .......... 16

A. The 2009 Assignment Agreement and the 2014 Assignment Agreement Unambiguously Transferred U.S. Common Law Rights in the LOS YAGUARU Marks to Plaintiff-Appellant Fitz .......... 21

B. At a Minimum, the 2009 Assignment Agreement and the 2014 Assignment Agreement Are Ambiguous as to the Transfer of U.S. Common Law Rights in the LOS YAGUARU Marks .......... 20

III. THE DISTRICT COURT ERRED IN CONCLUDING THAT PLAINTIFF-APPELLANT FITZ DID NOT ACQUIRE OWNERSHIP OF THE LOS YAGUARU MARKS THROUGH USE IN UNITED STATES COMMERCE .......... 38

IV. THE EXISTENCE OF A FACT ISSUE REGARDING OWNERSHIP OF THE LOS YAGUARU MARKS NECESSITATES REVERSAL ON ALL DISMISSED CAUSES OF ACTION, AS THE DISTRICT COURT'S ERRONEOUS HOLDING THAT PLAINTIFF-APPELLANT FITZ DOES NOT OWN THE LOS YAGUARU MARKS WAS CENTRAL TO THE GRANT OF SUMMARY JUDGMENT ON EACH CAUSE OF ACTION....................46

V. THE DISTRICT COURT ERRED IN DECLINING TO EXERCISE SUBJECT-MATTER JURISDICTION OVER PLAINTIFF-APPELLANT FITZ'S CLAIM FOR CANCELLATION OF THE SUBJECT REGISTRATION....................47

VI. THE DISTRICT COURT'S DISMISSAL OF THE PLAINTIFF-APPELLANT FITZ'S LANHAM ACT SECTION 43(A) UNFAIR COMPETITION CLAIM WAS PREDICATED ON AN INCORRECT STATUTORY CONSTRUCTION AND AN OVERLY RESTRICTIVE READING OF THE FOURTH CIRCUIT'S *BELMORA* OPINION....................52

VII. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF-APPELLANT FITZ'S TEXAS COMMON LAW UNFAIR COMPETITION CLAIM ....................57

CONCLUSION....................60

# TABLE OF AUTHORITIES

## Cases

*Allard Enters. v. Advanced Programming Res., Inc.*,
249 F.3d 564 (6th Cir. 2001) ........................................................... 40

*Amazing Spaces, Inc. v. Metro Mini Storage*,
608 F.3d 225 (5th Cir. 2010) ........................................................... 49

*Barnhart v. Thomas*,
540 U.S. 20 (2003) ............................................................... 25, 26

*Belmora LLC v. Bayer Consumer Care AG*,
819 F.3d 697, 709 (4th Cir. 2016)................................................

*Coker v. Coker*,
650 S.W.2d 391, 394 (Tex. 1983)........................................... *passim*

*Commodores Entm't Corp. v. McClary*,
879 F.3d 1114 (11th Cir. 2018) ................................................. *passim*

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23, 29, (2003)..........................................................52

*Element Cap. Mgmt., LLC v. Element Fin., Inc.*,
No. 23-CV-310, 2024 U.S. Dist. LEXIS 97674 (N.D. Tex. Mar. 12, 2024)..........................................................................49

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*,
754 F.2d 591 (5th Cir. 1985) ........................................................... 25

Garcia v. Garcia,
No. 04-05-00538-CV, 2006 WL 1684742, at *3 (Tex. App.—San Antonio June 21, 2006, pet. denied)...........................................33

*Giner v. Estate of Higgins*,
No. 11-CV-126, 2012 U.S. Dist. LEXIS 5264 (W.D. Tex. Jan. 13, 2012) ......................................................................................... 22, 23

*Harris v. Rowe*,

593 S.W.2d 303, 306 (Tex. 1980)........................................19

*In re Davenport*,
522 S.W.3d 452 (Tex. 2017).........................................................35

*Kern v. Sitel Corp.*,

517 F.3d 306, 309 (5th Cir. 2008)...............................................33

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*,

907 S.W.2d 517, 520 (Tex. 1995).................................................36

*Parrott v. Int'l Bancshares Corp.*,
__ F.4th __, 2026 U.S. App. LEXIS 4109 (5th Cir. 2026) ........... *passim*

*Peaches Entm't Corp. v. Entm't Repertoire Assocs.*,
62 F.3d 690 (5th Cir. 1995) .........................................................40

*Person's Co., Ltd. v. Christman*,
900 F.2d 1565 (Fed. Cir. 1990).....................................................25

*Repap Enterprises Inc. v. Kamyr Inc.*,

No. 92-5701, 1993 WL 322881, at *7 (E.D. Pa. June 8, 1993)...........56

*Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*,
80 F.4th 607 (5th Cir. 2023)..................................................28, 40

*Rick v. Buchansky*,
609 F. Supp. 1522 (S.D.N.Y. 1985) ....................................... *passim*

*Robi v. Reed*,
173 F.3d 736 (9th Cir. 1999) ............................................... *passim*

*RSUI Indem. Co. v. Lynd Co.*,
466 S.W.3d 113 (Tex. 2015)..................................................25, 27

*Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*,

7 F.4th 301, 310 & n.12 (5th Cir. 2021).......................................30

*Sellers v. Minerals Techs., Inc.*,
753 Fed. Appx. 272 (5th Cir. Nov. 29, 2018).................................15

*Smith v. Reg'l Transit Auth.*,
827 F.3d 412 (5th Cir. 2016) ........................................................15

*Southern Recycling, L.L.C. v. Aguilar*,
982 F.3d 374 (5th Cir. 2020) .......... 50

*Southwest Airlines Pilots Ass'n v. Southwest Airlines Co.*,
120 F.4th 474 (5th Cir. 2024) .......... 51

*Universal C.I.T. Credit Corp. v. Daniel,*
150 Tex. 513, 243 S.W.2d 154, 158 (Tex. 1951) .......... 30

*WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*,
844 F.3d 473 (5th Cir. 2016) .......... 15

**Statutes**

15 U.S.C. §1119 .......... 49

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1338(a) .......... 1

28 U.S.C. § 1367(a) .......... 1

**Rules**

FED. R. CIV. P. 56(a) .......... 15

## JURISDICTIONAL STATEMENT

On October 18, 2023, Plaintiff-Appellant Fitz filed this action for, *inter alia*, federal trademark infringement, unfair competition, and false designation of origin under the Lanham Act, Texas common law unfair competition, and cancellation of U.S. Registration No. 6,150,283 (the "Subject Registration") for fraud, in the U.S. District Court for the Northern District of Texas, pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a). (ROA.14). On October 8, 2025, the district court entered partial final judgment as to all Defendants-Appellees except Appellee Ordaz. (ROA.2209-2210). On October 31, 2025, the district court entered notice of its intention to enter final judgment with respect to Appellee Ordaz. (ROA.2211-2213). Plaintiff-Appellant Fitz filed a timely notice of appeal pursuant to Federal Rule of Civil Procedure 4(a) on November 7, 2025. (ROA.2214-2215). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the judgment below is a final judgment of a United States district court.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting summary judgment on ownership of the LOS YAGUARU marks by holding, as a

matter of law, that the 2009 assignment agreement did not transfer U.S. trademark rights to Viridiana Venegas, who later transferred such rights to Plaintiff-Appellant Fitz?

2. Whether the district court improperly narrowed Plaintiff-Appellant Fitz's Lanham Act §1125(a) claim to a single ownership theory and failed to consider record evidence demonstrating Plaintiff-Appellant Fitz's long-standing control, promotion, and commercial use of the LOS YAGUARU marks in United States commerce?

3. Whether the district court erred in dismissing Plaintiff-Appellant Fitz's claim for cancellation of U.S. Registration No. 6,150,283 for lack of subject-matter jurisdiction even if its holdings regarding Plaintiff-Appellant Fitz's other causes of action were to be affirmed?

4. Whether the district court erred in dismissing all of Plaintiff-Appellant Fitz's claims based on its erroneous holding the Plaintiff-Appellant Fitz does not own any U.S. trademark rights in the Los Yaguaru Mark?

5. Whether the district court erred in dismissing Plaintiff-Appellant Fitz's unfair competition claim under Section 43(a) of the

Lanham Act based on an overly restrictive reading of Section 43(a) and the Fourth Circuit's opinion in *Belmora*?

6. Whether the district court erred by dismissing Plaintiff-Appellant Fitz's Texas common law unfair competition claim on the basis of an incorrect understanding of the elements for such a claim?

## STATEMENT OF THE CASE

### I. Factual Background

Plaintiff-Appellant Fitz is the manager of the band *"Los Yaguaru de Angel Venegas"* (the "Band"), a musical group founded and originally owned by Angel Venegas Frias in Mexico in 1996, and which continues to operate today with at least three original performing members. (ROA.742, 2190). On August 30, 1996, Angel Venegas Frias applied to register the design mark LOS YAGUARU DE ANGEL VENEGAS in Mexico, and the application subsequently matured into Mexican Registration No. 552,594 on June 27, 1997. (ROA.724). Also on August 30, 1996, Angel Venegas Frias obtained a *"Certificado de Reserva de Derechos al Uso Exclusivo,"* which functions as a legal claim to the exclusive use of the Band's name in Mexico. (ROA.724). Since 1997, the

Band has performed under the LOS YAGUARU Marks both in Mexico and the United States. (ROA.725-727, 741-742, 2191).

Shortly after the Band's founding, Angel Venegas Frias entered into an agreement for the exclusive professional artistic representation of the Band by Plaintiff-Appellant Fitz's father. (ROA.724-725). In connection with the agreement, Plaintiff-Appellant Fitz became responsible for the promotion of the Band in the United States. (ROA.724-725). Among his many responsibilities, Plaintiff-Appellant Fitz secured visas for members of the Band to perform in the United States under the LOS YAGUARU Marks, managed the Band's social media accounts and marketing materials bearing the LOS YAGUARU Marks, and coordinated the Band's shows in the United States from 1997, when the Band first performed in the United States under the LOS YAGUARU Marks, through present. (ROA.725-727, 741-742, 2191).

Pursuant to an assignment agreement dated February 27, 2009 (the "2009 Assignment Agreement"), Angel Venegas Frias assigned the rights in and to the LOS YAGUARU Marks to his daughter, Viridiana Venegas Fabian. (ROA.727-728, 2191-2192). The 2009 Assignment Agreement contains both a provision illustratively referencing a

particular Mexican trademark registration and more general provisions making clear that Angel Venegas Frias was assigning to his daughter, Viridiana Venegas Fabian, "each and every one of the obligations and rights acquired by" Angel Venegas Frias "deriving from the name 'LOS YAGUARU DE ANGEL VENEGAS.'" (ROA.383-384, 727-728).

The provision illustratively referencing a particular Mexican trademark registration, on which the district court focused, provides in pertinent part that Angel Venegas Frias assigned to Viridiana Venegas Fabian "the rights he [held] over the exclusive use, trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS' as listed in" Mexican Registration No. 552,594 and the *Certificado de Reserva de Derechos al Uso Exclusivo*. (ROA.383-384, 727-728, 2192). The 2009 Assignment Agreement then goes on to provide, however, that Viridiana Venegas Fabian "assume[d] through subrogation each and every one of the obligations and rights acquired by" Angel Venegas Frias "deriving from the name 'LOS YAGUARU DE ANGEL VENEGAS.'" (ROA.383-384). Further still, the 2009 Assignment Agreement provides that Angel Venegas Frias "ha[d] not entered into any agreement with any other person by which the rights he [held] over the name 'LOS YAGUARU DE

ANGEL VENEGAS' may have been assigned, nor [was] that name encumbered or committed to any person." (ROA.383-384).

Following the death of Angel Venegas Frias in 2014, his daughter Viridiana Venegas Fabian (who was also the assignee under the 2009 Assignment Agreement) entered into an assignment agreement dated August 6, 2014 (the "2014 Assignment Agreement"), pursuant to which she assigned her rights in the LOS YAGUARU Marks to Plaintiff-Appellant Fitz. (ROA.456-458, 727-728, 2194-2195). The 2014 Assignment Agreement provides that Viridiana Venegas Fabian "assign[ed] all the rights and/or ownership" of the LOS YAGUARU DE ANGEL VENEGAS Mark to Plaintiff-Appellant Fitz for "unlimited use inside and outside the Mexican territory in perpetuity from the date of execution" of the 2014 Assignment Agreement. (ROA.456-458, 728, 2194-2195). In exchange for the assignment of the LOS YAGUARU Marks, Plaintiff-Appellant Fitz paid to Viridiana Venegas Fabian $330,000 Mexican Pesos. (ROA.456-458).

On March 29, 2012, David Venegas Frias, the brother of Angel Venegas Frias, filed U.S. Application Serial No. 85/564,163, seeking to register the LOS YAGUARU DE ANGEL VENEGAS Mark with the

United States Patent and Trademark Office ("USPTO") – in spite of the fact that, in 2009, Angel Venegas Frias, the original owner of the LOS YAGUARU Marks, had assigned the LOS YAGUARU Marks to his daughter, Viridiana Venegas Fabian. (ROA.729, 2192-2193). In doing so, David Venegas Frias falsely represented to the USPTO that he was the owner of the LOS YAGUARU DE ANGEL VENEGAS Mark, that the name "Angel Venegas" was a stage name or pseudonym for David Venegas Frias (rather than the actual name of his brother who had founded the band), and that to the best of his knowledge, no other person had any right to use the LOS YAGUARU DE ANGEL VENEGAS Mark in United States commerce. (ROA.730, 2193). David Venegas Frias made these representations despite the fact that he had previously acknowledged that his brother – Angel Venegas Frias – was the "owner and artistic director of the musical group named *Los Yaguaru de Angel Venegas*." (ROA.724-725). David Venegas Frias also made these representations despite the fact that he was known professionally only as *"Cachorro,"* and not "Angel Venegas." (ROA.732).

At the time that he filed U.S. Application Serial No. 85/564,163, David Venegas Frias also falsely represented to the USPTO that he first

used the LOS YAGUARU DE ANGEL VENEGAS Mark in United States commerce on July 24, 2012. (ROA.735). In fact, it was Plaintiff-Appellant Fitz – not David Venegas Frias – who had been using the LOS YAGUARU Marks in connection with the Band in United States commerce at that time, as Plaintiff-Appellant Fitz had done continuously as manager of the Band since 1997. (ROA.725-727, 741-742, 2191). Prior to 2012, David Venegas Frias had been operating under the name *"Grupo Carabo,"* and had only performed with the Band sporadically. (ROA.732, 2190). Even still, he was never granted any ownership of the Band or the LOS YAGUARU Marks. (*See* ROA.724-725, 727-728, 2191-2192). Moreover, although he returned to the Band in 2012 for occasional performances, beginning in 2015, David Venegas Frias primarily operated his own musical group under the name *"Angel Venegas y Su Orquesta Con Sabor,"* which remains active in United States commerce today. (ROA.735-737, 2195-2196).

Illustrative of his tenuous ties to the Band, on June 4, 2015, David Venegas Frias filed U.S. Application Serial No. 86/652,343 for the mark ANGEL VENEGAS Y SU ORQUESTA CON SABOR. (ROA.735-737). In doing so, David Venegas Frias represented to the USPTO that the name

"Angel Venegas" does not represent a living individual, thus contradicting his earlier representation to the USPTO in connection with the Subject Registration that "Angel Venegas" was the stage name of himself, David Venegas Frias. (ROA.735-737). Shortly after filing U.S. Application Serial No. 86/652,343, on July 16, 2015, David Venegas Frias also publicly unveiled the *Angel Venegas Y Su Orquesta Con Sabor* group as a tribute project to his late brother Angel Venegas Frias. (ROA.735-737). In August 2015, a nationally syndicated article further confirmed the launch of the project in honor of Angel Venegas Frias and the release by the group of the tribute album *"En Memoria."* (ROA.735-737). On November 8, 2024, Appellee Elizabeth Venegas Nunez, the successor-in-interest to David Venegas Frias, represented to the USPTO that the ANGEL VENEGAS Y SU ORQUESTA CON SABOR Mark is still in use by Defendants-Appellees today. (ROA.735-737).

Although Plaintiff-Appellant Fitz is the owner of the LOS YAGUARU Marks and Defendants-Appellees have been using, and continue to use, the ANGEL VENEGAS Y SU ORQUESTA CON SABOR Mark, shortly before initiation of this action, Plaintiff-Appellant Fitz became aware that Defendants-Appellees slowly and secretly began

using the LOS YAGUARU Marks instead of the ANGEL VENEGAS Y SU ORQUESTA CON SABOR Mark, to falsely convey an association with the Band. (ROA.2196). As a result of Defendants-Appellees' use of the LOS YAGUARU Marks, consumers have been misled to believe that Plaintiff-Appellant Fitz's Band will be performing, when in fact, Defendants-Appellees' band is performing. (ROA.737-738, 2196). Moreover, Defendants-Appellees' use of the LOS YAGUARU Marks in the United States has harmed Plaintiff-Appellant Fitz's business, by causing American venues, at which the Band would have otherwise performed, to refuse to hire the Band, since Defendants-Appellees' group charges less for performances. (ROA.737-738, 2196). Defendants-Appellees' conduct, and the consequences thereof, have indisputably caused economic harm to Plaintiff-Appellant Fitz and the Band, as well as harm to and confusion among consumers of the Band's services. (*See* ROA.737-738, 2196). The instant lawsuit followed as a result.

## II. Procedural Background

Plaintiff-Appellant Fitz filed this action in the district court on October 18, 2023. (ROA.14). On December 15, 2023, Defendants-Appellees filed a motion to dismiss Plaintiff-Appellant Fitz's claims.

(ROA.200). On August 29, 2024, the district court held that Plaintiff-Appellant Fitz "ha[d] statutory standing" to bring his Lanham Act claims, that Plaintiff-Appellant Fitz likewise "ha[d] standing to bring his common law unfair competition claims," and that Plaintiff-Appellant Fitz "properly stated a claim for cancellation of a trademark." (ROA.285-287).

On September 12, 2024, Defendants-Appellees filed an answer, asserting as affirmative defenses, *inter alia*, the statute of limitations and laches. (ROA.294-305). Following the close of fact discovery, on July 21, 2025, Defendants-Appellees moved for summary judgment on these affirmative defenses. (ROA.342-375). Defendants-Appellees also argued that summary judgment was warranted because Plaintiff-Appellant Fitz could not prove ownership of U.S. rights in the LOS YAGUARU Marks. (ROA.361-366). On July 22, 2025, Plaintiff-Appellant Fitz cross-moved for summary judgment as to his ownership of the LOS YAGUARU Marks, Defendants-Appellees' infringement, and invalidity of the Subject Registration based upon fraud. (ROA.718-756). On October 8, 2025, the district court issued an opinion and order denying Plaintiff-Appellant Fitz's motion, granting in-part Defendants-Appellees' motion, and entering partial final judgment as to all Defendants-Appellees except

Appellee Ordaz. (ROA.2189-2210). Shortly thereafter, on October 31, 2025, the district court entered notice of its intention to enter final judgment with respect to Appellee Ordaz. (ROA.2211-2213). On December 2, 2025, the district court formally entered final judgment as to Appellee Ordaz in conformity with its October 31, 2025 notice. (ROA.2219).

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that Plaintiff-Appellant Fitz did not acquire ownership of the LOS YAGUARU Marks, either through assignment or continuous use of the LOS YAGUARU Marks in United States commerce since 1997, and in declining to exercise jurisdiction over Plaintiff-Appellant Fitz's claim for cancellation of the Subject Registration. *First*, the 2009 Assignment Agreement and the 2014 Assignment Agreement unambiguously transferred to Plaintiff-Appellant Fitz the rights, once owned by Angel Venegas Frias, to use the LOS YAGUARU Marks in United States commerce. But, even if the Court concludes that the 2009 Assignment Agreement and the 2014 Assignment Agreement did not unambiguously transfer such rights to Plaintiff-Appellant Fitz, at a minimum, the 2009 Assignment Agreement

and the 2014 Assignment Agreement are ambiguous, and the issue should have been resolved by a jury. *Second*, even apart from the assignments, the summary-judgment record contained extensive evidence demonstrating Plaintiff-Appellant Fitz's long-standing control over the promotion, touring, and commercial exploitation of the LOS YAGUARU marks in the United States since the late 1990s. At a minimum, that evidence created genuine disputes of fact regarding priority, goodwill, and ownership that precluded summary judgment. *Third*, the existence of a fact issue regarding ownership of the Los Yaguaru Marks necessitates reversal on all dismissed causes of action, as the district court's erroneous holding that Plaintiff-Appellant Fitz does not own the Los Yaguaru Marks was central to the grant of summary judgment on each cause of action. *Fourth*, because Plaintiff-Appellant Fitz is the owner of the LOS YAGUARU Marks, either through assignment or continuous use of the LOS YAGUARU Marks, the district court erred in declining to exercise subject-matter jurisdiction over Plaintiff-Appellant Fitz's claim for cancellation of the Subject Registration which is intricately intertwined with Plaintiff-Appellant Fitz's other claims. *Fifth*, the district court's dismissal of Plaintiff-

Appellant Fitz's Lanham Act Section 43(a) unfair competition claim was predicated on an incorrect statutory construction and an overly restrictive reading of the Fourth Circuit's *Belmora* opinion. *Sixth*, the district court erred by dismissing Plaintiff-Appellant Fitz's Texas common law unfair competition claim on the basis of an incorrect understanding of the elements for such a claim.

For at least these reasons, the district court erred in concluding that Plaintiff-Appellant Fitz cannot not prove his ownership of the LOS YAGUARU Marks. Similarly, the district court erred in concluding that Plaintiff-Appellant Fitz's non-infringement causes of action should be dismissed and that it lacked subject-matter jurisdiction to cancel the Subject Registration. Accordingly, this Court should reverse the decision below, hold that Plaintiff-Appellant Fitz is the owner of the Los Yaguaru Marks, vacate the judgment entered in favor of Defendants-Appellees, and remand to the district court for further proceedings.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews the grant of summary judgment *de novo*, "applying the same standard that the district court applied." *Sellers v.*

*Minerals Techs., Inc.*, 753 Fed. Appx. 272, 274 (5th Cir. Nov. 29, 2018) (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016)). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether summary judgment is appropriate, courts must "view the evidence introduced and all factual inferences [therefrom] in the light most favorable to the party opposing summary judgment." *Sellers*, 753 Fed. Appx. at 274-275 (quoting *Smith*, 827 F.3d at 417).

Under Texas law, the interpretation of a contract, including whether its provisions are ambiguous, is a legal question reviewed *de novo*. *Id.* at 275 (quoting *WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 477 (5th Cir. 2016)); *see also Parrott v. Int'l Bancshares Corp.*, __ F.4th __, 2026 U.S. App. LEXIS 4109, at *19 (5th Cir. 2026). If, however, a contract is ambiguous, "summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Parrott*, __ F.4th at __, 2026 U.S. App. LEXIS 4109, at *19; *accord Sellers*, 753 Fed. Appx. at 275. In other words, if a contract is ambiguous, this Court should remand to the district

court and permit the trier of fact to resolve the ambiguity. *See, e.g.*, *Parrott*, __ F.4th at __, 2026 U.S. App. LEXIS 4109, at *22.

## II. THE DISTRICT COURT ERRED IN CONCLUDING THAT THE 2009 ASSIGNMENT AGREEMENT DID NOT TRANSFER U.S. COMMON LAW RIGHTS IN THE LOS YAGUARU MARKS TO PLAINTIFF-APPELLANT FITZ.

The district court erred in concluding as a matter of law that Plaintiff-Appellant Fitz did not acquire ownership of the LOS YAGUARU Marks through the 2009 Assignment Agreement and the 2014 Assignment Agreement.

In granting summary judgment in favor of Defendants-Appellees and against Plaintiff-Appellant Fitz, the district court incorrectly held that there was no genuine dispute that Plaintiff-Appellant Fitz could not prove an essential element of his Lanham Act trademark infringement and unfair competition claims, namely, ownership of the LOS YAGUARU Marks. (ROA.2197-2198). Specifically, the district court ruled that the 2009 Assignment Agreement "did not transfer U.S. common law rights" in the LOS YAGUARU Marks to Viridiana Venegas Fabian, and therefore, Viridiana Venegas Fabian "could not have transferred them"

to Plaintiff-Appellant Fitz through the 2014 Assignment Agreement. (ROA.2202).

The district court further dismissed Plaintiff-Appellant Fitz's claim for cancellation of the Subject Registration for lack of subject-matter jurisdiction, holding that because Plaintiff-Appellant Fitz's claims "giving him a jurisdictional hook cannot be proven," the district court "d[id] not have jurisdiction . . . to grant the remedy of cancellation." (ROA.2207). In so holding, the district court "expresse[d] no opinion" as to Plaintiff-Appellant Fitz's claims that the Subject Registration was obtained through fraud, or that David Venegas Frias lacked ownership of the LOS YAGUARU Marks at the time he applied for the Subject Registration. (ROA.2207).

In so holding, the district court applied the wrong law and incorrectly held that the 2009 Assignment Agreement unambiguously did not transfer rights in the LOS YAGUARU Marks in United States commerce from Angel Venegas Frias to Viridiana Venegas Fabian. It is important to note that the district court's erroneous holding about the scope of the 2009 Assignment Agreement was the only reason that the district court held as a matter of law that Plaintiff-Appellant Fitz had not

acquired the United States common law trademark rights to the LOS YAGUARU Marks by assignment.

### A. The District Court Held That the 2014 Assignment Agreement Is Ambiguous as to Whether Its Scope Includes United States Common Law Trademark Rights to the LOS YAGUARU Marks.

The district court's order makes clear that, had it found that the United States common law trademark rights to the LOS YAGUARU Marks had been conveyed to Viridiana Venegas Fabian by Angel Venegas Frias via the 2009 Assignment Agreement (as it should have), there would have been an ambiguity – and, thus, a fact issue precluding summary judgment – as to whether the 2014 Assignment Agreement conveyed the United States common law trademark rights to the LOS YAGUARU Marks from Viridiana Venegas Fabian to Plaintiff-Appellant Fitz. (*See* ROA.2202 (the district court holding that, "[h]ad Fabian held the rights to the U.S. trademark, conflicting statements in the 2014 assignment would render it ambiguous.")).

As the Texas Supreme Court has held, such ambiguity creates a fact issue that precludes summary judgment. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the

interpretation of the instrument becomes a fact issue.") (citing *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex. 1980)).

While Plaintiff-Appellant Fitz believes that the 2014 Assignment Agreement actually contains an unambiguous assignment of the United States common law trademark rights to the LOS YAGUARU Marks from Viridiana Venegas Fabian to Plaintiff-Appellant Fitz, the language of the 2014 Assignment Agreement makes clear that the 2014 Assignment Agreement is, at the very least, ambiguous on that point. The district court did, in fact, make that finding. In doing so, the district court's order granting summary judgment noted that the 2014 Assignment Agreement "says in its operative clauses that the assignment is 'unlimited,' 'within and outside the Mexican national territory.'" (ROA.2194)

Since the district court itself held that the 2014 Assignment Agreement was ambiguous and contractual ambiguity creates a fact issue for the trier of fact, as discussed above, the district court's grant of summary judgment due to its holding regarding purported defects in the chain of assignments to Plaintiff-Appellant Fitz necessarily only arose from its holding about the 2009 Assignment Agreement. As will be

explained in detail below, that holding – on which the district court's entire summary judgment was predicated – was erroneous.

### B. Contrary to the District Court's Holding, the 2009 Assignment Agreement Is Also *At Least* Ambiguous as to Whether Its Scope Includes United States Common Law Trademark Rights to the LOS YAGUARU Marks.

For the reasons discussed above, the district court's grant of summary judgment on the ownership-by-assignment issue was predicated solely on the purported narrowness of the 2009 Assignment Agreement. When properly construed, however, the 2009 Assignment Agreement (like the 2014 Assignment Agreement) unambiguously transferred rights in the LOS YAGUARU Marks in United States commerce to Plaintiff-Appellant Fitz. In the alternative, and at a minimum, the 2009 Assignment Agreement and the 2014 Assignment Agreement are ambiguous and summary judgment in favor of Defendants-Appellees was inappropriate. In either case, the district court erred as a matter of law in interpreting the 2009 Assignment Agreement and the 2014 Assignment Agreement, and its decision should be reversed.

#### 1. The 2009 Assignment Agreement and the 2014 Assignment Agreement Unambiguously Transferred U.S. Common Law Rights in the LOS YAGUARU Marks to Plaintiff-Appellant Fitz.

Both the 2009 Assignment Agreement and the 2014 Assignment Agreement unambiguously transferred United States rights in the LOS YAGUARU Marks to Plaintiff-Appellant Fitz. In reaching the opposite conclusion, the district court first held that the "plain text" of the 2009 Assignment Agreement "reflects transfer of only the Mexican intellectual property registrations" from Angel Venegas Frias to Viridiana Venegas Fabian. (ROA.2200). Because the 2009 Assignment Agreement "did not transfer U.S. common law rights" from Angel Venegas Frias to Viridiana Venegas Fabian, the district court concluded that Viridiana Venegas Fabian "could not have transferred them" to Plaintiff-Appellant Fitz through the 2014 Assignment Agreement. (ROA.2202). But, the district court erred in so holding for at least three reasons. *First*, the district court applied Texas law in interpretating the 2009 Assignment Agreement, but on its face, the 2009 Assignment Agreement provides that Mexican law governs. *Second*, even if Texas law did apply, the district court's interpretation of the 2009 Assignment Agreement runs afoul of Texas rules of contractual interpretation, including the rule of

the last antecedent. And, *third*, the district court improperly read some provisions of the 2009 Assignment Agreement in isolation, rendering others superfluous or meaningless. For any one of, or all of, these reasons, this Court should reverse.

a. Mexican Law, Which Governs the 2009 Assignment Agreement, Mandates an Inquiry More Concerned with the Intent of the Parties than with Technical Analysis of the Language Used.

"In contrast to the United States and its common law heritage, Mexico's legal system is based on the civil law tradition." *Giner v. Estate of Higgins*, No. 11-CV-126, 2012 U.S. Dist. LEXIS 5264, at *15 (W.D. Tex. Jan. 13, 2012). There are "several broad principles for interpreting contracts" under Mexican law. *Id.* at *30. Most notably, "[t]he parties' intentions are a critical concern" and, unlike Texas law, "if the contract's words contradict the parties' intentions, the parties' intentions should prevail." *Id.* Although the 2009 Assignment Agreement specifically provides that "the parties [] expressly agree to be bound by the Laws [] of the Federal District" (n/k/a Mexico City) (ROA.383-384), in "all matters concerning the interpretation" of the 2009 Assignment Agreement, the district court nonetheless applied Texas law in its interpretation. This was legal error that demonstrably affected the district court's

interpretation of the 2009 Assignment Agreement. Indeed, in applying Texas law, the district court declined to consider the testimony of Viridiana Venegas Fabian – that the parties intended to transfer rights in the LOS YAGUARU Marks "throughout the world" – because of the district court's (mistaken) holding that it introduced "new words" that are "beyond the [] four corners" of the 2009 Assignment Agreement. (ROA.2200). This holding was inaccurate even under Texas common law for the reasons discussed below, but it is not even the correct inquiry under the Mexican law that applies to the 2009 Assignment Agreement. Under Mexican law, the district court should have considered Ms. Fabian's testimony as evidence of the parties' intent. *See Giner*, 2012 U.S. Dist. LEXIS 5264, at *30. Because the district court failed to do so, its interpretation of the 2009 Assignment Agreement was erroneous. The district court should have held that the 2009 Assignment Agreement transferred rights in the LOS YAGUARU Marks "throughout the world," as Ms. Fabian testified. (ROA.2200)

b. Even if Texas Law Did Apply, the District Court's Interpretation of the 2009 Assignment Agreement Runs Afoul of Texas Rules of Contractual Interpretation.

Even if Texas law did apply to the 2009 Assignment Agreement – again, it does not – the district court erred in its application of Texas law. Start with the text of the 2009 Assignment Agreement. Paragraph I(b) of the Recitals provides in relevant part that Angel Venegas Frias "wishes to assign the rights he holds over the exclusive use, trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS' as granted in" Mexican Registration No. 552,594 and the *Certificado de Reserva de Derechos al Uso Exclusivo.* (ROA.383-384, 727-728, 2192). In turn, Clause One provides that "'THE ASSIGNOR' ASSIGNS to 'THE ASSIGNEE' the rights he holds over the exclusive use, trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS' as listed in" Paragraph I(b) of the Recitals "with all that corresponds to them in fact and law." (ROA.383-384, 727-728, 2192). The district court held that the terms "as listed in" and "as granted in" Mexican Registration No. 552,594 and the *Certificado de Reserva de Derechos al Uso Exclusivo* modified the "rights" granted in the 2009 Assignment Agreement. (ROA.2200). As a result, the district court held that the 2009 Assignment Agreement did not transfer rights to the LOS YAGUARU Marks in United States commerce because, as the district court observed, "trademarks adhere to

the 'territoriality doctrine,' which is the concept that foreign rights to use a certain trademark are distinct from domestic rights to the same trademark." (ROA.2198) (citing *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) and *Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990)). But, because this construction is incorrect, the territoriality doctrine is inapposite. (Indeed, even if this construction were correct, it would not support summary judgment due to conflicting statements elsewhere in the 2009 Assignment Agreement creating ambiguity that precludes summary judgment).

In construing contracts, Texas courts "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). One such grammatical rule is the rule of the last antecedent, "according to which, a limiting clause or phrase . . . should ordinarily be read as modifying the noun or phrase that it immediately follows." *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (Scalia, J.). Indeed, this rule "is quite sensible as a matter of grammar." *Id.* And, in applying this rule to the plain text of the 2009

Assignment Agreement, the relevant "limiting clause[s] or phrase[s]" are "as listed in" and "as granted in" Mexican Registration No. 552,594 and the *Certificado de Reserva de Derechos al Uso Exclusivo*, and "the noun or phrase that [they] immediately follow[]" is "trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS'," not "rights." *Cf. Barnhart*, 540 U.S. at 26. As such, under the rule of the last antecedent, "as listed in" and "as granted in" Mexican Registration No. 552,594 and the *Certificado de Reserva de Derechos al Uso Exclusivo* modified "trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS'," serving to identify the trademarks that were subject to the 2009 Assignment Agreement, rather than to limit the "rights" conferred by the 2009 Assignment Agreement to Mexico only. The district court's contrary interpretation of the 2009 Assignment Agreement was erroneous.

c. The District Court Improperly Read Some Provisions of the 2009 Assignment Agreement in Isolation, Impermissibly Rendering Others Superfluous or Meaningless, and Unnecessarily Interpreted Them in Ways That Conflict With Other Provisions, in Violation of the Rule of Harmonization.

Other provisions of the 2009 Assignment Agreement further demonstrate that the construction reached by the district court was erroneous. It is well-established that in construing contracts, Texas

courts "strive to give effect to all of the words and provisions so that none is rendered meaningless." *RSUI*, 466 S.W.3d at 118. Moreover, "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Id.* But, the district court failed to properly apply these principles in interpreting the 2009 Assignment Agreement. Specifically, the district court read Paragraph I(b) of the Recitals, as well as Clause One, in isolation, failing to consider – and rendering meaningless – Clause Two of the 2009 Assignment Agreement.

Clause Two of the 2009 Assignment Agreement provides that "[b]y virtue of the [] assignment of rights," in Clause One "'THE ASSIGNEE' assumes through subrogation each and every one of the obligations and rights acquired by the 'ASSIGNOR' deriving from the name 'LOS YAGUARU DE ANGEL VENEGAS.'" (ROA.383-384). On its face, Clause Two contains no territorial limitation. (*See* ROA.383-384). Nor does Clause Two refer to Mexican Registration No. 552,594 or the *Certificado de Reserva de Derechos al Uso Exclusivo*. (*See* ROA.383-384). Again, Clause Two refers to "*each and every one of . . . the rights*" of Angel Venegas Frias "*deriving from the name 'LOS YAGUARU DE ANGEL*

*VENEGAS*.'" (ROA.383-384 (emphasis added)). There is no dispute that, at the time of the 2009 Assignment Agreement, Angel Venegas Frias had United States common law rights in the name LOS YAGUARU DE ANGEL VENEGAS. Indeed, the undisputed evidence demonstrates that the Band, including both Plaintiff-Appellant Fitz and Angel Venegas Frias, continuously used the LOS YAGUARU Marks in United States commerce since 1997, long before David Venegas Frias applied for the Subject Registration. (ROA.725-727, 741-742, 2191). Because "[r]ights in a trademark are determined by the date of the mark's first use in commerce," *Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*, 80 F.4th 607, 617 (5th Cir. 2023), and there is no dispute that Angel Venegas Frias was using the LOS YAGUARU Marks in commerce as of – and long before – the 2009 Assignment Agreement, Clause Two further supports the conclusion that the unambiguous language of the 2009 Assignment Agreement transferred United States rights in the LOS YAGUARU Marks.

The bottom line is that, in contrast to the district court's construction of the 2009 Assignment Agreement, it contains both a provision illustratively referencing a particular Mexican trademark

registration – not as a limitation on the geographic scope of the assignment, but to further describe the LOS YAGUARU Marks for which rights were being transferred worldwide – and more general provisions making even clearer that Angel Venegas Frias was assigning to his daughter, Viridiana Venegas Fabian, "each and every one of the obligations and rights acquired by" Angel Venegas Frias "deriving from the name 'LOS YAGUARU DE ANGEL VENEGAS.'" (ROA.383-384).

The provision illustratively referencing a particular Mexican trademark registration, on which the district court focused, provides in pertinent part that Angel Venegas Frias assigned to Viridiana Venegas Fabian "the rights he [held] over the exclusive use, trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS' as listed in" Mexican Registration No. 552,594 and the *Certificado de Reserva de Derechos al Uso Exclusivo*. (ROA.383-384, 727-728, 2192). "[T]he rights he [held] over the exclusive use, trademark and design of 'LOS YAGUARU DE ANGEL VENEGAS'" included, of course, United States common law trademark rights. The illustrative reference to Mexican documents providing more detail on the "LOS YAGUARU DE ANGEL VENEGAS" Marks that were being assigned should not be read as limiting the

geographic scope of the assignment to Mexico, particularly in the absence of clear language so limiting the scope of the assignment and particularly when doing so would bring the language of this sentence into conflict with other provisions of the 2009 Assignment Agreement that are clearly geographically unlimited. Among other problems, this would violate the rule of harmonization, by which the Texas Supreme Court requires that courts "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis original) (citing *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (Tex. 1951)). This Court of Appeals has recognized and applied this rule of Texas law. *See, e.g., Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 310 & n. 12 (5th Cir. 2021) (citing Texas Supreme Court and Fifth Circuit cases to this effect). Here, the district court did exactly what the Texas Supreme Court forbids: it gave controlling effect to a single provision taken alone. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").

It is especially clear that the narrow construction of Clause One assigned by the district court is incorrect given that the 2009 Assignment Agreement then goes on to provide in very clear language that Viridiana Venegas Fabian "assume[d] through subrogation each and every one of the obligations and rights acquired by" Angel Venegas Frias "deriving from the name 'LOS YAGUARU DE ANGEL VENEGAS.'" (ROA.383-384). Further still, the 2009 Assignment Agreement provides that Angel Venegas Frias "ha[d] not entered into any agreement with any other person by which the rights he [held] over the name 'LOS YAGUARU DE ANGEL VENEGAS' may have been assigned, nor [was] that name encumbered or committed to any person." (ROA.383-384).

Importantly, Angel Venegas Frias did not merely warrant that he had not assigned, encumbered, or committed to any person his rights in the specific Mexican trademark registration that had been illustratively mentioned earlier in the 2009 Assignment Agreement – the only thing that the district court held was conveyed by the 2009 Assignment Agreement. Rather, by this language, Angel Venegas Frias warranted that he had not in any way alienated "the rights he [held] over the name 'LOS YAGUARU DE ANGEL VENEGAS.'" Such a broad warranty would

only be necessary if Angel Venegas Frias were conveying to his daughter, Viridiana Venegas Fabian, all of the "the rights he [held] over the name 'LOS YAGUARU DE ANGEL VENEGAS'" and not merely the rights to a specific Mexican trademark registration.

There would be no need for him to warrant that he had not alienated rights that he was not conveying. Accordingly, the district court's interpretation impermissibly renders Angel Venegas Frias's warranty of his ownership of "the rights he [held] over the name 'LOS YAGUARU DE ANGEL VENEGAS'" – not merely his ownership of a Mexican trademark registration – meaningless surplusage. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless.") (citations omitted).

In the ways set forth above, the district court's construction violates this Court's admonition that Texas law requires that "[c]ourts should 'consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless" and that "[n]o single provision taken alone will be given controlling effect;

rather, all the provisions must be considered with reference to the whole instrument." *See Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (quoting *Coker*, 650 S.W.2d at 393).

Also, while it is true that the specific controls over the general in the event of a conflict, "a particular description only controls over a general description if there is a conflict or repugnance." *See Garcia v. Garcia*, No. 04-05-00538-CV, 2006 WL 1684742, at *3 (Tex. App.—San Antonio June 21, 2006, pet. denied). Since the provisions here can be harmonized, the rules about specific and general provisions do not apply.

In short, the plain and ordinary meaning of the relevant provisions of the 2009 Assignment Agreement, read in light of rules of grammar and as a whole, rather than in isolation, demonstrate that the 2009 Assignment Agreement transferred United States common law rights in the LOS YAGUARU Marks from Angel Venegas Frias to Viridiana Venegas Fabian. Because the district court erred in concluding otherwise, this Court should reverse the decision of the district court as to the 2009 Assignment Agreement. Moreover, because the district court held that the 2014 Assignment Agreement "could not have transferred" United States common law rights in the LOS YAGUARU Marks from

Viridiana Venegas Fabian to Plaintiff-Appellant Fitz because of the district court's erroneous conclusion with respect to the 2009 Assignment Agreement, the district court's conclusion as to the 2014 Assignment Agreement should be reversed for the same reasons.[1]

### 2. At a Minimum, the 2009 Assignment Agreement and the 2014 Assignment Agreement Are Ambiguous as to the Transfer of U.S. Common Law Rights in the LOS YAGUARU Marks

Even if the Court concludes that the 2009 Assignment Agreement and the 2014 Assignment Agreement did not unambiguously transfer United States common law rights in the LOS YAGUARU Marks to Plaintiff-Appellant Fitz (though they did), at a minimum, the 2009 Assignment Agreement and the 2014 Assignment Agreement are

[1] The fact that the district court's interpretation of the 2014 Assignment Agreement was based on its erroneous interpretation of the 2009 Assignment Agreement alone warrants reversal. Moreover, the 2014 Assignment Agreement expressly provides that "'THE TRANSFEROR' agrees to assign all the rights and/or ownership regarding the Exclusive Use Rights Reserve of 'LOS YAGUARU DE ANGEL VENEGAS' and the Trademark and Design of 'LOS YAGUARU DE ANGEL VENEGAS', registered respectively in the National Institute of Author Rights and the Mexican Institute of Industrial Property with *unlimited use inside and outside the Mexican territory in perpetuity* . . . ." (ROA.456-458 (emphasis added)). On its face, the 2014 Assignment Agreement thus unambiguously assigns U.S. rights in the LOS YAGUARU Marks.

ambiguous in this regard. Ambiguity in a contract arises "where a contract's 'meaning is uncertain and doubtful or it is reasonably susceptible to more than one interpretation.'" *Parrott*, __ F.4th at __, 2026 U.S. App. LEXIS 4109, at *19 (quoting *In re Davenport*, 522 S.W.3d 452, 456 (Tex. 2017)). This Court has also found an ambiguity where "tension" exists as to different provisions of the same agreement. *See Parrott*, __ F.4th at __, 2026 U.S. App. LEXIS 4109, at *21. Because, at a minimum, the 2009 Assignment Agreement and the 2014 Assignment Agreement are both susceptible to more than one reasonable interpretation, and tensions exist between various provisions if they are interpreted as the district court interpreted them (instead of being interpreted the way they should be, to harmonize the provisions), then at a minimum, the 2009 Assignment Agreement and the 2014 Assignment Agreement are ambiguous.

As set forth *supra* Sec. II.B.1, Plaintiff-Appellant Fitz has offered a more reasonable interpretation of the 2009 Assignment Agreement than the district court's interpretation – in fact, Plaintiff-Appellant Fitz's interpretation is the only reasonable interpretation of the 2009 Assignment Agreement, when read in light of rules of grammar and as a

whole, rather than in isolation. But, at a minimum, the conflicting interpretations of Plaintiff-Appellant Fitz and the district court demonstrate that the 2009 Assignment Agreement is susceptible to more than one reasonable interpretation.

In addition, the existence of what is at the very least an ambiguity means that the district court erred in declining to consider the testimony of Viridiana Venegas Fabian that the parties intended to transfer rights in the LOS YAGUARU Marks "throughout the world." Texas contract law permits extrinsic, parol evidence when contractual language is ambiguous. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement.") (citation omitted).

Moreover, because the district court's interpretation of the 2009 Assignment Agreement creates tension between the provisions of the 2009 Assignment Agreement, namely, Paragraph I(b) of the Recitals and Clause One, on the one hand, and Clause Two, on the other hand, at a minimum, this Court should permit such tensions to be resolved by the

trier of fact. *See Parrott*, __ F.4th at __, 2026 U.S. App. LEXIS 4109, at *22. Similarly, because the district court itself concluded that the 2014 Assignment Agreement "would" be "ambiguous" if the 2009 Assignment Agreement had transferred U.S. common law rights to Viridiana Venegas Fabian (ROA.2202), at a minimum, the trier of fact should be permitted to resolve such ambiguities.

Simply put, if the Court concludes that the 2009 Assignment Agreement and the 2014 Assignment Agreement do not unambiguously transfer U.S. rights in the LOS YAGUARU Marks, the Court should find that the 2009 Assignment Agreement and the 2014 Assignment Agreement are ambiguous. And, if the Court so concludes, this case should be remanded to the district court. The Court of Appeals should reverse the grant of summary judgment as to all causes of action, hold that there is at least a fact issue regarding whether the 2009 Assignment and 2014 Assignment resulted in Appellant owning Angel Venegas's trademark rights in the Los Yaguaru name, and remand the case to allow the District Court to evaluate the remaining grounds of Appellee's motion for summary judgment motion in light of this holding.

## III. THE DISTRICT COURT ERRED IN CONCLUDING THAT PLAINTIFF-APPELLANT FITZ DID NOT ACQUIRE OWNERSHIP OF THE LOS YAGUARU MARKS THROUGH USE IN UNITED STATES COMMERCE

Regardless of whether the Court concludes that Plaintiff-Appellant Fitz unambiguously obtained ownership of the LOS YAGUARU Marks through the 2009 Assignment Agreement and the 2014 Assignment Agreement – or that the 2009 Assignment Agreement and the 2014 Assignment Agreement are ambiguous – the summary-judgment record contained substantial evidence demonstrating Plaintiff-Appellant Fitz's decades-long control over the commercial exploitation of the LOS YAGUARU marks in the United States. In spite of the fact that this provides a basis for ownership of the LOS YAGUARU marks that is entirely independent of the assignments, as discussed below, the district court declined to address that evidence, inaccurately stating that Plaintiff-Appellant Fitz advanced "no other legal theory" of ownership beyond the written assignments. (ROA.2197). But the record evidence concerning Plaintiff-Appellant Fitz's continuous promotion, booking, and commercial management of the band since the 1990s at minimum created genuine disputes of material fact regarding the ownership and goodwill associated with the marks. The district court did not reach this

question, instead erroneously concluding that, "[b]esides the two written assignment agreements in 2009 and 2014," Plaintiff-Appellant Fitz "advance[d] no other legal theory under which he possesses U.S. rights to the [LOS YAGUARU Marks] prior to [David Venegas Frias's] application for the successfully registered trademark . . . ." (ROA.2197). But, the district court's conclusion in this regard was utterly at odds with the arguments advanced and evidence submitted by Plaintiff-Appellant Fitz below, which demonstrated that Plaintiff-Appellant Fitz's rights "*are based on continuous and exclusive use beginning in 1997*, followed by a clear chain of assignments *and uninterrupted commercial control of the brand*." (ROA.740-742 (emphasis added)). Because the district court failed to consider this argument, and the evidence submitted in support thereof, the district court erred as a matter of law and the decision below must be reversed regardless of whether the 2009 Assignment Agreement and the 2014 Assignment Agreement transferred ownership to Plaintiff-Appellant Fitz.

As set forth above, it is well-established that "[r]ights in a trademark are determined by the date of the mark's first use in commerce." *Rex Real Est.*, 80 F.4th at 617. Even "[t]he territorial rights

of a holder of a federally registered trademark are always subject to any superior common law rights acquired by another party through actual use prior to the registrant's constructive use." *Allard Enters. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001); *see also Peaches Entm't Corp. v. Entm't Repertoire Assocs.*, 62 F.3d 690, 692-693 (5th Cir. 1995). In assessing ownership of common law rights among competing claimants in a musical group, the critical question is whether the claimant "remain[ed] continuously involved with the group and [is] in a position to control the quality of its services." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1133 (11th Cir. 2018) (quoting *Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999)); *see also Rick v. Buchansky*, 609 F. Supp. 1522, 1537-1538 (S.D.N.Y. 1985). Because there is no genuine dispute that Plaintiff-Appellant Fitz has been continuously involved with the Band since 1997, and has, in fact, controlled the quality of the Band's services offered under the LOS YAGUARU Marks in United States commerce since then, there is no genuine dispute that Plaintiff-Appellant Fitz has demonstrated his ownership of the LOS YAGUARU Marks.

The undisputed evidence demonstrates that since 1997, Plaintiff-Appellant Fitz has been responsible for the promotion of the Band in the

United States. (ROA.725-727, 741-742, 2191). Among his responsibilities, from 1997 through present, Plaintiff-Appellant Fitz secured visas for members of the Band to perform in the United States under the LOS YAGUARU Marks, managed the Band's social media accounts, marketed materials bearing the LOS YAGUARU Marks, and coordinated the Band's shows in the United States. (ROA.725-727, 741-742, 2191). In other words, Plaintiff-Appellant Fitz has been using the LOS YAGUARU Marks in United States commerce, including through the aforementioned activities, and has continuously controlled the Band's services since the Band first began performing in the United States in 1997. These activities are more than sufficient to demonstrate that Plaintiff-Appellant Fitz is the owner of the LOS YAGUARU Marks through use in United States commerce prior to any use in United States commerce by Defendants-Appellees, regardless of whether the Court concludes that Plaintiff-Appellant Fitz also owns the LOS YAGUARU Marks through assignment.

Three cases are instructive here. In the first such case, *Buchansky*, the Southern District of New York addressed a dispute between a non-performing manager of a musical group and its former performing

members, regarding ownership of the trademark covering the name of the musical group. 609 F. Supp. 1522. While the manager of the group "most directly promoted the name [of the group] through the solicitation of live bookings and recording contracts, and through advertising the group's concert appearances and recordings," there was no evidence that the performers ever "promoted the group by means other than simply performing at live concerts and in recording sessions booked or scheduled previously" by the manager. *Id.* at 1533. The *Buchansky* court held that the manager – not the members of the group – was the owner of the mark because the manager was "in a position to control the content and quality of the entertainment services provided" by the group, "[p]articularly in view of the constant turnover of performers." 609 F. Supp. at 1537-1538. So too here. Plaintiff-Appellant Fitz – not David Venegas Frias, whose involvement with the Band from 1997 through present has been, at most, sporadic, or Defendants-Appellees, who have never been involved with the Band (only with a competing band that more recently adopted the Band's name in an effort to confuse consumers) – is the only one who has been in a position to control the content and quality of the entertainment services provided by the Band.

Drawing on *Buchansky*, in *Robi*, the Ninth Circuit addressed a dispute over ownership of a musical group's mark as between an original member of the group, who was also the group's manager, and the assignee of a former performing member of the group. *Robi*, 173 F.3d at 737. Echoing the holding of *Buchansky*, the Ninth Circuit in *Robi* observed that "a person who remains continuously involved with the group and is in a position to control the quality of its services retains the right to use of the mark, even when that person is a manager rather than a performer." *Robi*, 173 F.3d at 740. Because the manager in *Robi* was the only person "who ha[d] maintained continuity with the group and ha[d] been in a position to control the quality of its services," whereas the former performing member "left the group[,] never returned to it[,] ceased to perform at all for a period of years, and [was then] deceased," the manager of the group maintained ownership of the mark, not the assignee of the former performing member. The same result should obtain here. Whereas David Venegas Frias left the Band for many years and, even after returning, performed with the Band only sporadically, later adopting and performing under the separate and competing ANGEL VENEGAS Y SU ORQUESTA CON SABOR Mark, Plaintiff-

Appellant Fitz has managed the Band, which consists of at least three of its original members, continuously since 1997. (ROA.742, 2190).

Finally, and most recently, in *Commodores*, the Eleventh Circuit adopted the decision of the Ninth Circuit in *Robi*, holding that as to a musical group, "the rights to the name belong[] to the members 'who remain continuously involved with the group and [are] in a position to control the quality of its services.'" *Commodores*, 879 F.3d at 1133 (quoting *Robi*, 173 F.3d at 740). Because, among other responsibilities, the remaining members of the group "decide[d] how many shows the group [would] do in a year, and where and when they [would] perform," the remaining members of the group had the ability to control the quality of the group's services. Conversely, the departing member had no such control because "[i]n the period after he left the band, save two performances as a fill-in guitarist in 2010, he did not meet with the other members of the group to rehearse or perform[,] [h]e did not join the group to make business decisions about performance schedules or recordings[,] [h]e stopped writing songs with the group[,] [and he] was not involved with the group's decisions about performances, whether about the songs to be performed, the personnel to be involved, or the production details of

the shows." *Commodores*, 879 F.3d at 1133-1134. As such, the remaining members of the group – not the departing member of the group – retained ownership of the group's mark. Again, the same result should obtain here.

In sum, applying the wisdom of *Buchansky*, *Robi*, and *Commodores*, this Court should hold that – regardless of whether Plaintiff-Appellant Fitz obtained ownership of the LOS YAGUARU Marks through assignment (though he did) – Plaintiff-Appellant Fitz is the owner of the LOS YAGUARU Marks by virtue of his continuous role as manager of the Band since 1997. While Plaintiff-Appellant Fitz has maintained continuous control over the Band and its services since 1997, prior to 2012, David Venegas Frias had been operating under the name *Grupo Carabo,* and had only performed with the Band sporadically. (ROA.732, 2190). Moreover, although he returned to the Band in 2012 for occasional performances, beginning in 2015, he primarily operated his own musical group under the name *Angel Venegas y Su Orquesta Con Sabor*, which remains active in United States commerce today. (ROA.2196). As such Plaintiff-Appellant Fitz – not David Venegas Frias or any of Defendants-Appellees, none of whom are original band members – is the owner of the

LOS YAGUARU Marks. *See Commodores*, 879 F.3d at 1133; *Robi*, 173 F.3d at 740; *Buchansky*, 609 F. Supp. at 1537-1538.

The district court did not engage with this theory, even though Plaintiff-Appellant Fitz provided substantial evidence in support of it in responding to Defendants-Appellees' motion for summary judgment. Because the district court erred in doing so, this Court should reverse.

## IV. THE EXISTENCE OF A FACT ISSUE REGARDING OWNERSHIP OF THE LOS YAGUARU MARKS NECESSITATES REVERSAL ON ALL DISMISSED CAUSES OF ACTION, AS THE DISTRICT COURT'S ERRONEOUS HOLDING THAT PLAINTIFF-APPELLANT FITZ DOES NOT OWN THE LOS YAGUARU MARKS WAS CENTRAL TO THE GRANT OF SUMMARY JUDGMENT ON EACH CAUSE OF ACTION.

The district court's erroneous holding that Plaintiff-Appellant Fitz does not own the Los Yaguaru Marks was central to its grant of summary judgment on every cause of action. While some of Plaintiff-Appellant Fitz's causes of action would survive even if this (erroneous) holding were affirmed, *none* of Plaintiff-Appellant Fitz's causes of action can be dismissed if this holding is reversed because the district court's order predicated its dismissal of each of Appellant's causes of action on its

holding that Plaintiff-Appellant Fitz had no U.S. rights in the Los Yaguaru Marks. (ROA.2206).

Like the foundation for a house, the district court's analysis of every cause of action Plaintiff-Appellant Fitz asserted is predicated upon the district court's summary judgment holding that, as a matter of law, Plaintiff-Appellant Fitz had no U.S. rights in the Los Yaguaru Marks. Because this holding is erroneous, as shown above, the entire house of cards collapses and the summary judgment with respect to each cause of action must be reversed.

## V. THE DISTRICT COURT ERRED IN DECLINING TO EXERCISE SUBJECT-MATTER JURISDICTION OVER PLAINTIFF-APPELLANT FITZ'S CLAIM FOR CANCELLATION OF THE SUBJECT REGISTRATION

The district court erred in declining to exercise subject-matter jurisdiction over Plaintiff-Appellant Fitz's claim for cancellation of the Subject Registration. The district court based its decision on its erroneous holding as to Plaintiff-Appellant Fitz's ownership of the LOS YAGUARU Marks, holding that because Plaintiff-Appellant Fitz's claims "giving him a jurisdictional hook," could not be proven, the district court lacked jurisdiction over the claim for cancellation. (ROA.2206-2207).

But, because, as set forth *supra* Secs. II-III, the district court erred with respect to Plaintiff-Appellant Fitz's ownership of the LOS YAGUARU Marks, the district court likewise erred with respect to Plaintiff-Appellant Fitz's claim for cancellation. In other words, because Plaintiff-Appellant Fitz can prove his ownership of the LOS YAGUARU Marks and put forward summary judgment evidence establishing fact issues regarding his ownership of the LOS YAGUARU Marks acquired both by assignment and by use in United States commerce, the district court has jurisdiction over the cancellation claim.

At a minimum, even if this Court were to hold that genuine factual disputes preclude a finding, on summary judgment, that Plaintiff owns the LOS YAGUARU Marks, Appellant's claim for cancellation should have been permitted to proceed alongside Appellant's claim of ownership and infringement until such claims were resolved at trial. Pursuant to 15 U.S.C. § 1119, federal courts are authorized to order cancellation "in any action involving a registered mark," reflecting Congress's intent that courts adjudicating trademark disputes may determine the validity of a registration as part of that action. Once federal jurisdiction properly attaches to a trademark case, a continuing dispute over the validity,

ownership, or enforceability of the registered mark presents a live Article III controversy even if other Lanham Act claims are resolved on summary judgment. Indeed, as other courts within the Northern District of Texas have observed, where the basis of a suit "depends on the rights [a plaintiff] purportedly owns in the mark at issue," there is a "justiciable case or controversy" precluding dismissal of a cancellation claim, even though some claims may have been dismissed or withdrawn. *See Element Cap. Mgmt., LLC v. Element Fin., Inc.*, No. 23-CV-310, 2024 U.S. Dist. LEXIS 97674, at *5 (N.D. Tex. Mar. 12, 2024); *see also Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 250 (5th Cir. 2010) ("We are *dubitante* that the district court's grant of summary judgment rendered the cancellation issue moot . . . .").

Importantly, the evidence of fraud set forth in support of Plaintiff-Appellant Fitz's cancellation claim should also negate any presumption of ownership that might otherwise arise from the purported trademark registration. It should be noted that the issue of jurisdiction over the cancellation claim was intertwined with the merits of Plaintiff-Appellant Fitz's other claims at least because the district court's jurisdiction over the cancellation claim was "derived from the same statute" as Plaintiff-

Appellant Fitz's other claims, and the jurisdictional issue could not be "extricated from the merits and tried as a separate issue." *Cf. Southern Recycling, L.L.C. v. Aguilar*, 982 F.3d 374, 381 (5th Cir. 2020). Indeed, the district court based its jurisdictional conclusion on its holding that "a court cannot retain subject-matter jurisdiction over the cancellation claim alone once the other claims are dismissed." (ROA.2206-2207).

Moreover, in finding that it lacked jurisdiction over Plaintiff-Appellant Fitz's claim for cancellation, the district court "expresse[d] no opinion as to [Plaintiff-Appellant Fitz's] arguments that David [Venegas Frias] obtained the [Subject Registration] through fraud or that David [Venegas Frias] lacked ownership of the [LOS YAGUARU Marks] at the time he applied for registration." (ROA.2207). But, had the district court addressed these issues, its analysis of the ownership issue would have been affected (as these factors are clearly relevant to ownership under cases including *Buchansky*, *Robi*, and *Commodores*, discussed *supra*), thus demonstrating that these issues were intertwined and should have

been addressed as though jurisdiction over the cancellation claim existed.[2]

Simply put, because jurisdiction over the cancellation claim was intertwined with the merits of Plaintiff-Appellant Fitz's other claims, the district court should have "assume[d] jurisdiction and proceed[ed] to the merits," of the cancellation claim, including by addressing whether David Venegas Frias obtained the Subject Registration through fraud or lacked ownership of the LOS YAGUARU Marks at the time he applied for registration. *Cf. Southwest Airlines Pilots Ass'n v. Southwest Airlines Co.*, 120 F.4th 474, 481 (5th Cir. 2024). Proceeding to the merits would have made clear that the purported registration was invalid due to fraud and would, thereby, have impacted the district court's analysis of the

[2] By way of example, if, as Plaintiff-Appellant Fitz maintains, the Subject Registration is invalid for fraud, then Appellee Venegas Nunez would not have been entitled to a presumption of ownership of the LOS YAGUARU Marks or a constructive first use date as of the date of filing of the application that matured into the Subject Registration. (*But see* ROA.2204 ("In an unregistered trademark holder's infringement claim against the registrant of a trademark, the registrant is 'granted a presumption of ownership, dating to the filing date of the application for federal registration.'")). Had the district court engaged with the argument that Appellee Venegas Nunez's purported registration is invalid due to fraud, any such presumption would have been negated, as it should have been.

ownership issue by negating any presumption that might arise from the purported registration. As such, this Court should reverse, and remand for further proceedings on Plaintiff-Appellant Fitz's claim for cancellation, including Plaintiff-Appellant Fitz's claim for fraud and non-ownership by David Venegas Frias.

## VI. THE DISTRICT COURT'S DISMISSAL OF THE PLAINTIFF-APPELLANT FITZ'S LANHAM ACT SECTION 43(A) UNFAIR COMPETITION CLAIM WAS PREDICATED ON AN INCORRECT STATUTORY CONSTRUCTION AND AN OVERLY RESTRICTIVE READING OF THE FOURTH CIRCUIT'S *BELMORA* OPINION.

As made clear by the Fourth Circuit's decision in *Belmora*, unfair competition under Section 43(a) of the Lanham Act is a very broad claim that "goes beyond trademark protection." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 709 (4th Cir. 2016) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 29, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003)). "Significantly, the plain language of § 43(a) does not require that a plaintiff possess or have used a trademark in U.S. commerce as an element of the cause of action. Section 43(a) stands in sharp contrast to Lanham Act § 32, which is titled as and expressly addresses 'infringement.'" *Belmora*, 819 F.3d at 706.

Importantly, there is no requirement that a Lanham Act unfair competition plaintiff have used its own mark in U.S. commerce. "Under [Section 43(a) of the Lanham Act], the *defendant* must have "use[d] in commerce" the offending "word, term, name, [or] symbol," but the *plaintiff* need only "believe[ ] that he or she is or is likely to be damaged by such act." *Belmora*, 819 F.3d at 708. Courts "lack authority to introduce a requirement into § 43(a) that Congress plainly omitted." *Id.* "Nothing in [the Supreme Court's] *Lexmark* [decision] can be read to suggest that § 43(a) claims have an unstated requirement that the plaintiff have first used its own mark (word, term, name, symbol, or device) in U.S. commerce before a cause of action will lie against a defendant who is breaching the statute." *Id.*

The district court's distinction of *Belmora* from the instant case hinges on the location of the injury in *Belmora*. The plaintiff in that case only sold its product in Mexico and, thus, pled that it had been injured in Mexico. *See Belmora*, 819 F.3d at 711 ("The complaint alleges Belmora's misleading association with BCC's FLANAX has caused BCC customers to buy the Belmora FLANAX in the United States instead of purchasing BCC's FLANAX in Mexico.").

This, however, is a distinction without a difference. The Fourth Circuit mentioned this in connection with the requirement that the plaintiff be injured *somewhere* – that it have suffered injury proximately caused by the defendant and be within the zone of interests protected by Section 43(a) of the Lanham Act. *See id.* at 711-12. The Fourth Circuit never states that the plaintiff must be injured in a foreign territory in which the plaintiff owns a trademark. Yet, the district court inexplicably read such a requirement into Section 43(a) of the Lanham Act and dismissed Plaintiff-Appellant Fitz's Lanham Act unfair competition claims.

Plaintiff-Appellant Fitz provided evidence of an injury proximately caused by Defendants-Appellees. Defendants-Appellees' use of the LOS YAGUARU Marks in the United States has harmed Plaintiff-Appellant Fitz's business, by causing American venues, at which the Band would have otherwise performed, to refuse to hire the Band, since Defendants-Appellees' group charges less for performances. (ROA.737-738, 2196).

These are injuries proximately caused by Defendants-Appellees that are within the zone of interests protected by Section 43(a) of the Lanham Act. Accordingly, the district court misinterpreted both the

Lanham Act's Section 43(a) and the *Belmora* decision interpreting it in dismissing Plaintiff-Appellant Fitz's Lanham Act unfair competition claims. The dismissal must be reversed.

In addition, the Fourth Circuit in *Belmora* explicitly recognized a Lanham Act unfair competition claim for false advertising brought by a company that claimed no right to any mark similar to one used by defendant. Importantly, the injury alleged there was to sales in the United States. *See Belmora*, 819 F.3d at 712 ("As a direct competitor to Belmora in the United States, BHC sufficiently alleges that Belmora engaged in Lanham Act unfair competition by using deceptive advertisements that capitalized on BCC's goodwill.").

Yet, the Fourth Circuit imposed no requirement that this plaintiff own a mark anywhere. It allowed a claim for injury in the United States without ownership of a similar mark in the United States – exactly the kind of claim that the district court erroneously held would be impermissible under *Belmora*. The Fourth Circuit made clear that all that was required was that the plaintiff "demonstrate an injury to sales or reputation proximately caused by [the defendant's] alleged conduct." *See Belmora*, 819 F.3d at 712 ("If not for Belmora's statements that its

FLANAX was the same one known and trusted in Mexico, some of its consumers could very well have instead purchased BHC's ALEVE brand. These lost customers likewise satisfy Lexmark's second prong: they demonstrate an injury to sales or reputation proximately caused by Belmora's alleged conduct.").

Likewise, here, Plaintiff-Appellant Fitz has pled and proven that the Band has lost out on bookings – and, thus, payment – because of Defendant-Appellees' unfair competition. (ROA.737-738, 2196)

It also bears mentioning that there is legal authority to support the proposition that the filing of trademark registrations including false statements – like the ones filed and prosecuted by Defendants-Appellees here and their predecessors in interest – is, by itself, an act of unfair competition under Section 43(a) of the Lanham Act. In an Eastern District of Pennsylvania case, a district court held that the wrongful filing of patent applications constituted unfair competition under the Lanham Act. *See Repap Enterprises Inc. v. Kamyr Inc.*, No. 92-5701, 1993 WL 322881, at *7 (E.D. Pa. June 8, 1993) ("The filing of the applications themselves were activities in commerce and the potential injury to the value of Repap's intellectual property, because of Kamyr's patent

applications, amounts to an effect upon commerce. Accordingly, Repap has proved its claim under Section 43(a) of the Lanham Act.”).

In sum, the protection provided by both the Lanham Act’s Section 43(a) and the *Belmora* decision interpreting it is much broader than the district court held. The Lanham Act Section 43(a) claim asserted by – and the evidence offered by – Plaintiff-Appellant Fitz is comfortably within its reach.

## VII. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF-APPELLANT FITZ’S TEXAS COMMON LAW UNFAIR COMPETITION CLAIM.

The district court dismissed Plaintiff-Appellant Fitz’s claim for Texas state law common law unfair competition based on its erroneous finding that Plaintiff-Appellant Fitz does not own trademark rights in the Los Yaguaru name. (ROA.2206) Since, as shown above, Plaintiff-Appellant Fitz does own such rights, the district court’s analysis rests on a broken foundation and its dismissal of Plaintiff-Appellant Fitz’s Texas state law common law unfair competition claim should be reversed.

Moreover, this Court of Appeals has previously noted that the analysis of Lanham Act claims is “dispositive” of “corresponding claims under Texas law.” *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608

F.3d 225, 236 n. 7 (5th Cir. 2010) ("The analysis with respect to Amazing Spaces's claims under the Lanham Act will be dispositive of its corresponding claims under Texas law as well."). While *Amazing Spaces* applied this principle in the context of a Lanham Act trademark infringement claim and a Texas state law unfair competition claim that corresponded to that, the same logic dictates that a Section 43(a) claim should similarly govern its corresponding Texas common law counterpart. Under the reasoning of *Belmora*, where liability hinges on injury to sales and reputation rather than trademark ownership, the analysis of the federal claim is equally decisive for the state law claim. Consequently, the *Belmora* standard should be applied to Plaintiff-Appellant Fitz's Texas unfair competition claim.

Thus, for the same reasons as set forth above with respect to the Lanham Act's Section 43(a) and the Fourth Circuit's *Belmora* opinion interpreting it, Plaintiff-Appellant Fitz's Texas state law common law unfair competition claim can move forward even without ownership of a trademark. While the district court's erroneous holding about ownership of trademark rights should be reversed, Plaintiff-Appellant Fitz's state law unfair competition claim can survive even if it is not.

For both of the foregoing reasons, this Court of Appeals should reverse the dismissal of Plaintiff-Appellant Fitz's Texas state law common law unfair competition claim.[3].

## CONCLUSION

For at least the reasons given herein, this Court should reverse the decision below, vacate the judgment entered in favor of Defendants-Appellees, find that there is at least a fact issue as to Plaintiff-Appellant Fitz's ownership of the LOS YAGUARU Marks, and remand to the district court for further proceedings consistent with such holding.

Dated: March 20, 2026

[3] Notably, the district court's decision on summary judgment was also at odds with the district court's earlier decision denying Appellees' motion to dismiss, in which the district court properly recognized that Appellant's allegations that he "managed" the Band "for a long time" and that Appellees' "use of the same name to perform Mexican band music in at least one overlapping state" were sufficient to establish Appellant's statutory standing for his Lanham Act and common law unfair competition claims. (*See* ROA.285-287).

Respectfully Submitted,

/s/ Humberto Rubio
Humberto Rubio
FBN: 036433
**Rubio & Associates, P.A.**
8950 S.W. 74th Court, Suite 1804
Miami, FL 33156
Telephone: 786-220-2061
Facsimile: 786-220-2062

/s/ Anthony T. Ricciardelli
Anthony Thomas Ricciardelli
TBN: 24070493
**Ricciardelli Law Firm, P.L.L.C.**
1910 Pacific Avenue, Suite 13000
Dallas, TX 75201
Telephone: 972-345-8730

***Counsel for Appellant***
***Zeferino Ocampo Fitz***

## CERTIFICATE OF SERVICE

I certify that on March 20, 2026, the foregoing document was served on counsel of record in this appeal via the Court's ECF system.

/s/Anthony Thomas Ricciardelli
Anthony Thomas Ricciardelli

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 11,342 words.

/s/Anthony Thomas Ricciardelli
Anthony Thomas Ricciardelli